IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PAUL E. SAMPSON, et al.,

        Plaintiffs,

v.              CIVIL ACTION NO. 2:09-cv-00382

CHASE HOME FINANCE, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

  Pending before the court are two motions to dismiss. The first is defendant Advanta's Motion for Partial Dismissal of Plaintiffs' Complaint [Docket 15] challenging the sufficiency of Claims III, V, and VII of the Complaint. The second is a Motion to Dismiss by defendants Chase Home Finance and EMC Mortgage Corporation [Docket 17] seeking dismissal of Claims I, II, III, IV, V, and VII. As explained below, the Motions are **GRANTED**.

**I. Factual and Procedural History**

  **A. The Loan**

  In November 1996, the Sampsons obtained a thirty-year, fixed-rate loan from defendant Advanta Mortgage/Advanta National Bank ("Advanta") in the amount of $43,500, at a 10.825% interest rate (the "loan"). (Compl. ¶ 7.) The loan was secured by the Sampsons' residence in Elkview, West Virginia (the "property"). The Sampsons were charged $11,187.44 in settlement charges, including $3840 in brokerage fees. Defendant Security One was the Sampsons' mortgage broker.

On January 16, 1997, the Sampsons refinanced the loan with Chase Manhattan Mortgage Corporation and obtained a fifteen-year, balloon note from defendant Chase Home Finance ("Chase") in the amount of $56,000, at an interest rate of 10.75% (the "balloon note"). (*Id.* ¶¶ 9-10.)[1] The Sampsons assert that, in refinancing the loan, they "were not apprised of the substantial change of loan terms nor the modifications as to same." (*Id.* ¶ 10.) The refinanced loan provided a "yield spread premium" to Security One payable outside of closing. (*Id.* ¶ 11.)[2] Additionally, as part of the loan, the Sampsons were required to pay a $1120 loan origination fee to Security One. (*Id.* ¶¶ 12.) The Sampsons allege that at the time of the note, "some or all Defendants conspired to loan a principal sum to the Plaintiffs which exceeded the value of the residence which secured the loan." (*Id.* ¶ 13.) They contend that "[t]hereafter, Advanta sold or otherwise assigned this loan to [defendant] EMC Mortgage [Corporation]" ("EMC"). (*Id.* ¶15.)

Eventually, the Sampsons fell behind on their mortgage payments. "[I]n order to keep their home," the Sampsons "entered into a forbearance agreement with EMC on May 24, 1999" (the "forbearance agreement"). The forbearance agreement, the Sampsons contend, "contained improper and illegal charges." (*Id.* ¶16.) And, they assert, "[a]s a part of the agreement, [the Sampsons] paid Advanta the sum of $3,000.00," which "was wrongfully rejected by Advanta." (*Id.* ¶ 17.) The Sampsons assert that, "[d]espite [their] good faith efforts to retain their home by entering into this illegal forbearance agreement and payments toward the same, EMC sold the Property at a

---

[1] A balloon note is a long-term loan that requires payment due upon maturity upon a date certain.

[2] A "yield spread premium" is a payment from a lender to a mortgage broker for originating and processing a loan with a higher-than-market interest rate.

foreclosure sale on May 25, 1999, to Advanta Mortgage for $15,000.00." (*Id.* ¶ 18.) In a "final effort to save their home," the Sampsons filed for bankruptcy protection on June 9, 1999. (*Id.* ¶19.)

### B. The Bankruptcy Proceedings

On June 9, 1999, the Sampsons filed a voluntary petition for relief in United States Bankruptcy Court for the Southern District of West Virginia under Chapter 13 of the Bankruptcy Code. *In re Sampson*, 2:09-cv-21103 (Bankr. S.D. W. Va. 1999). The Sampsons filed their schedules on July 22, 1999, listing their assets and liabilities. Schedule D, which listed creditors with secured claims against the Sampsons, recognized Advanta as having a valid, undisputed claim for $50,170, secured by the property. (Def. Chase Mot. Summ. J., Ex. 2.) It further stated that the property's fair market value was $70,000. (*Id.*) The Sampsons did not assert claims against the defendants or dispute the validity of the indebtedness owed on the property.

On October 8, 1999, Advanta substantiated its claim by filing a proof of claim for $60,077.64, which included debts of $4681.33. (*Id.* at Ex. C.) Although they now assert that the proof of claim "contained illegal and improper charges," (Compl. ¶ 20), the Sampsons did not object to the proof of claim in bankruptcy court. By operation of law, Advanta's proof of claim was "deemed allowed" by the bankruptcy court. On July 10, 2000, the Sampsons filed an Amended Chapter 13 Plan (the "Chapter 13 Plan") (Def. Chase Mot. Summ. J., Ex. D.), which the bankruptcy court confirmed on September 7, 2000, (*id.* at Ex. E). On October 11, 2000, the bankruptcy court entered an order stating the arrearage balance and that the post-petition arrearage included attorney fees and costs. (*Id.* at Ex. F.) The Sampsons received a discharge of their bankruptcy on February 7, 2007. Nevertheless, they contend "their mortgage continues to contain illegal charges and fees." (Compl. ¶ 23.)

**C. The Civil Suit**

More than two years later, on February 12, 2009, the Sampsons filed suit in the Circuit Court of Kanawha County, West Virginia, against Advanta, Chase, EMC, and Security One (collectively, the "defendants"), alleging nefarious behavior and a panoply of misdeeds. The defendants removed the action to federal court on April 17, 2009.[3]

The Complaint asserts seven state law causes of action against the defendants based upon facts relating to the origination, terms, and execution of the loan, the balloon note, and the forbearance agreement. Count I asserts a claim against EMC for "assignee liability." (Compl. ¶¶ 25-27.) Count II asserts a claim against EMC under the West Virginia Consumer Protection Act, W. Va. Code section 46A-2-115©, for "failure to accept loan payments," and for "improperly and illegally charg[ing] Plaintiffs late fees on payments which they refused to accept." (*Id.* ¶¶ 28-32.) Count III asserts claims against all of the defendants for "unconscionable contract." (*Id.* ¶¶ 33-36.) In particular, the Sampsons allege that the defendants "have engaged in a pattern of home equity skimming and predatory lending practices to make unfair loans in order to transfer the home equity from the borrowers to the Defendants" through various illegal schemes. (*Id.* ¶ 34.) Count IV asserts claims for fraud and conspiracy against Security One, Advanta, and Chase. (*Id.* ¶¶ 37-44.) This Count alleges that these defendants "conspired between themselves and an appraiser to fraudulently misrepresent the market value of the Plaintiffs' home." (*Id.* ¶ 41.) Count V asserts claims against

---

[3] Section 1446(b) of Title 28 of the United States Code provides that "[t]he notice of removal of a civil action shall be filed within thirty days" after the defendant has been served with process. Here, the defendants' notice of removal was filed more than thirty days after the Sampsons filed the Complaint. The defendants contend, however, that the Sampsons never served Advanta; that Advanta first received notice of the complaint from counsel for EMC on March 23, 2009. The Sampsons do not contest this assertion. Therefore, the court **FINDS** that the notice of removal was timely filed.

Advanta and EMC for illegal debt collection. (*Id.* ¶¶ 45-47.) Particularly, the Sampsons allege that these defendants "made false representations regarding the character, extent, or amount of a claim against Plaintiffs in violation of W. Va. Code §[]46A-2-127(d), in their reinstatement letters and Proof of Claim filed in Plaintiffs' bankruptcy proceedings." (*Id.* ¶ 46.) Count VI asserts a claim against Security One for illegal settlement fees. (*Id.* ¶¶ 48-55.) And Count VII asserts general predatory-lending claims against all of the defendants. (*Id.* ¶¶ 56-58.)

### III. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### III. Discussion

By their motions, the defendants challenge the sufficiency of the Complaint. Advanta asserts that the Counts against it—III, IV, V, and VII—should be dismissed. It contends that those Counts fail to state a claim for which relief may be granted, and that, in any event, these state law claims are preempted by federal law. Chase and EMC contend that all of the Counts, except for Count VI, must be dismissed. Count I, they assert, lacks a sufficient factual basis to state a claim. The

remainder of the claims, they maintain, are barred by res judicata. As explained below, with the exception of Count VI, the Sampsons' claims are barred and must be dismissed.

A debtor's failure to raise claims related to his bankruptcy may constitute a waiver of those claims in a subsequent civil action. *See County Fuel Co., Inc. v. Equitable Bank Corp.*, 832 F.2d 290, 293 (4th Cir. 1987). In *County Fuel*, the debtor filed for Chapter 11 bankruptcy protection. In the bankruptcy court proceedings, the secured creditor filed a proof of claim. The debtor never objected to that proof of claim. *Id.* at 291. Nearly two years after the bankruptcy proceedings were over, the debtor filed a breach-of-contract action in state court, challenging the creditor's decision to call its secured loan. The district court dismissed the action, concluding that res judicata barred the action. *Id.* at 292.

The court of appeals affirmed the district court judgment on the basis of waiver. "[P]reclusion," the court explained, "is required to protect the integrity and repose of the earlier adjudications, particularly where, as here, a party has reasonably acted in reliance upon the assumed finality and integrity of those adjudications." *Id.* at 293. The court observed that "one who fails to interpose an available counterclaim [. . .] is 'precluded, after the rendition of judgment ... from maintaining an action on the claim if: . . . (b) [t]he relationship between the [unasserted] counterclaim and the . . . claim is such that successful prosecution of the second action would nullify the initial judgment.'" *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 22(2)(b)).

At least one district court in this circuit has ruled that "an order of confirmation [must] be given *res judicata* effect as to those issues which were or could have been decided at the time of confirmation." *In re Woods*, 130 B.R. 204, 205 (Bankr. W. D. Va. 1990). And courts of appeals have held that "a bankruptcy court order allowing an uncontested proof of claim constitutes a 'final

judgment' and is thus a predicate for *res judicata*." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 625 (2d Cir. 2007) (citing *Matter of Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993), and *Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525, 528-31 (9th Cir. 1998)); *Matter of Chappell*, 984 F.2d 775, 782 (7th Cir. 1993) ("As a general rule, the failure to raise an objection at the confirmation hearing or to appeal from the order of confirmation should preclude attack on the plan or any provision therein as illegal in a subsequent proceeding." (internal quotation marks and ellipses omitted)). For example, the Ninth Circuit has held that a proof of claim, deemed allowed by the bankruptcy court, is a final judgment. *Seigel*, 143 F.3d at 531. In *Siegel*, a debtor executed a note and deed of trust which was subsequently foreclosed on by the creditor. *Id.* at 528. The debtor declared bankruptcy. *Id.* In the bankruptcy proceedings, the creditor filed two proofs of claim without objection by the debtor. *Id.* The debtor was ultimately discharged from bankruptcy, and the matter was closed. *Id.*

The debtor then filed suit against the creditor, alleging a variety of contract and tort causes of action. *Id.* at 529. Affirming the district court, the court of appeals held that res judicata barred the debtor's claims, because they stemmed from the same nucleus of facts as the issues that were presented to the bankruptcy court. *Id.* The court explained that "'res judicata bars all grounds for recovery that *could have been asserted*, whether they were or not, in a prior suit between the same parties on the same cause of action.' That applies to matters decided in bankruptcy." *Id.* at 528-29 (quoting *Robertson v. Isomedix, Inc. (In re Intl. Nutronics)*, 28 F.3d 965, 969 (9th Cir. 1994)). The court recognized that 11 U.S.C. § 502(a) authorizes a creditor to submit a proof of claim in a bankruptcy proceeding to establish the amount it is owed by the debtor. When the bankruptcy court formally allows that claim, the court explained, "there can be little doubt about the ultimate res

judicata effect of that allowance." *Id.* at 530. Thus, § 502(a) is "a recognition of the fact that people can raise objections and litigate them, if they see something wrong with a claim, but if they do not, the claim will be treated in all respects as a claim allowed by the court itself." *Id.* at 530.

"Res judicata, or claim preclusion, bars the re-litigation of any claims that were or could have been raised in a prior proceeding between the same parties." *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008).[4] Here, the Sampsons declared Chapter 13 bankruptcy based on the same facts that form the foundation of their current claims. They entered into a Chapter 13 plan that was confirmed by the bankruptcy court, and their bankruptcy was subsequently discharged. For the duration of these proceedings—nearly a year and a half—the Sampsons could have challenged the contractual validity of their agreements with the defendants or raised claims of the defendants' allegedly illegal practices. Yet they did not. The Sampsons' claims with regard to the origination, terms, and execution of the loan, the balloon note, or the forbearance agreement are thus barred. To rule otherwise would undermine the bankruptcy court's confirmation order. Save for Count VI, allowing the Sampsons' current claims to go forward would require reexamination of the same evidence that was provided in the bankruptcy proceedings.[5]

---

[4] The distinction between cases disposed of on res judicata grounds and those resolved based on waiver appears to rest on whether the bankruptcy court decision was a final judgment. *Compare County Fuel*, 832 F.2d at 292 (expressing doubts over application of res judicata because bankruptcy court decision was not final), *with Siegel*, 143 F.3d at 530-31 (applying res judicata where bankruptcy court decision was final and distinguishing *County Fuel*). Because the bankruptcy court's confirmation order was a final judgment, res judicata is appropriate here.

[5] This is not a situation where a debtor's tort claim arose after his bankruptcy petition was filed. *See, e.g.*, *In re Carter*, 258 B.R. 526, 527 (Bankr. S.D. Ga. 2001) (permitting tort claim that arose post-confirmation order).

Furthermore, the Sampsons have not offered any reasons why their tort claims could not have been presented to challenge their debts in the bankruptcy proceedings. Rather, they contend that their claims are not barred because their claims "alleg[e] violations of consumer protection laws" and "do not go to the validity of the plan or the treatment of creditors' claims." (Pls.' Resp. Def. Chase Mot. Summ. J. 7.) But this contention misses the point. "Rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). The issue is not whether the claims that are now being pursued are identical to the issues resolved in the bankruptcy proceedings. Instead, the issue is whether the Sampsons' current claims could have been resolved in bankruptcy court, and whether addressing them here would undermine the bankruptcy court's orders. Though based in tort rather than contract, the Sampsons' current claims ultimately challenge the validity of the agreements that lead to the Sampsons' bankruptcy.

Other than the "illegal settlement fee" claim in Count VI, the Sampsons' claims are barred. The defendants' Motions are thus **GRANTED**. This leaves Count VI as the lone surviving claim, with Security One as the only remaining defendant.[6]

---

[6] The defendants have not sought dismissal of Count VI of the Complaint, which alleges that "Security One's charging of settlement and brokerage fees" violated W. Va. Code section 46A-4-107(4). (Compl. ¶ 54.) Count VI is of a different nature than the other counts in the Complaint. The other counts relate to the Sampsons' debts, and thus should have been presented in the bankruptcy proceedings. Count VI, however, relates to Security One's actions as the Sampsons' mortgage broker. It was not a party of interest in the bankruptcy proceedings, the illegal-settlement-fee claim is unrelated to the Sampsons' debts, and a ruling on that claim would not upset the finality of the bankruptcy proceedings. Dismissal based upon the preceding analysis, therefore, would be inappropriate.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

                         ENTER:       November 3, 2009

_____
Joseph R. Goodwin, Chief Judge